UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
SCOTTSDALE INSURANCE COMPANY,                    :
                                                 :
                      Plaintiff,                 :
                                                 :           **REPORT AND**
              -against-                          :           **RECOMMENDATION**
                                                 :
ACCESS SOLUTIONS GROUP LLC,                      :           17-CV-6793 (ENV) (PK)
                                                 :
                      Defendant.                 :
                                                 :
----------------------------------------------------------------- x


**Peggy Kuo, United States Magistrate Judge:**

Scottsdale Insurance Company ("Plaintiff") brings this action against Access Solutions

Group LLC ("Defendant"), seeking a declaratory judgment that, *inter alia*, rescinds a commercial

general liability insurance policy issued to Defendant.  (Am. Compl, Dkt. 31.)  Before the Court on

referral from the Honorable Eric Vitaliano is Plaintiff's Motion for Default Judgment (the

"Motion") (Dkt. 36).  For the reasons stated herein, the undersigned respectfully recommends that

the Motion be granted.[1]

## FACTUAL BACKGROUND

The following facts are taken from the Amended Complaint, unless otherwise stated, and are

accepted as true for purposes of the Motion.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

Defendant applied to Plaintiff for insurance coverage by submitting a Commercial Insurance

Application dated December 3, 2015, which included an Artisan Contractors Supplemental

Application (together, "Application").  (Am. Compl. at ¶¶ 7, 10.)  In response to the question

---

[1] The Amended Complaint included other causes of action based on lack of coverage under the policy.  (Am. Compl.
Counts II to VIII.)  In the Motion, however, Plaintiff argues only that the policy should be rescinded based on
misrepresentations on the policy application.  Accordingly, this Report and Recommendation only considers that
argument.

"Describe all operations in detail," Defendant wrote "INTERIOR PAINTING AND CARPENTRY." (*Id.* at ¶ 11; Ex. A to Am. Compl., Appl. at 2, 4, Dkt. 31-1.) Defendant also indicated that there was a total payroll of $60,000, of which $30,000 was for "Interior Paint" and $30,000 was for "Carpentry." (Am. Compl. at ¶ 12; Appl. at 4.) There was no indication that Defendant performed any exterior work. (Am. Compl. at ¶ 14.) In addition, Defendant's response to the question, "Any work performed above two stories in height from grade?" was "No." (Am. Compl. at ¶ 13; Appl. at 6.) Based on the information provided in the Application, Plaintiff issued policy number CPS2311713 (the "Policy") to Defendant, effective December 3, 2015 to December 3, 2016. (Am. Compl. at ¶¶ 15, 16; Ex. B to Am. Compl., Policy, Dkt. 31-2.)

On June 29, 2017, 93 Bowery Holdings LLC filed a lawsuit in New York State Supreme Court, New York County, against Defendant and several other parties (the "Underlying Action") alleging, *inter alia*, that its property at 93 Bowery Street was obstructed on the third and eighth floors by scaffolding erected on an abutting property at 89 Bowery Street, including during the period covered by the Policy. (Am. Compl. at ¶¶ 18-25.) The Underlying Action requests damages up to $1 million. (Verified Complaint at ¶ 34, Ex. C to Am. Compl., Dkt. 31-3.)

Pursuant to a contract between Defendant and the general contractor for the project at 89 Bowery Street, Defendant was required to erect a sidewalk shed, pipe scaffolding at the front façade, a truss system with overhead protection, and pipe scaffolding at the 7th floor return at 89 Bowery Street. (Am. Compl. at ¶ 29; Ex. D to Am. Compl., Contract at 2, Dkt. 31-4.)

In a letter dated September 25, 2017, counsel for Plaintiff informed Defendant that it was rescinding the Policy because Defendant had misrepresented on the Application that its work was limited to interior paint and carpentry and that it did not do work above two stories. (Letter to Def., Dkt. 36-9 at 1.) The letter included a check from Defendant to Plaintiff returning its premium in the amount of $25,082.48. (*Id.* at 20; Am. Compl. at ¶ 59.)

## PROCEDURAL BACKGROUND

Plaintiff filed this declaratory judgment action on November 1, 2017 and amended the complaint on October 26, 2018.  (Dkt. 1, 31.)  Defendant was served with the Amended Complaint on November 5, 2018.  (Dkt. 33.)  Defendant failed to answer or otherwise appear, and an entry of default was entered on January 10, 2019.  (Dkt. 35.)

## DISCUSSION

### I.       Default Judgment Standard

Default judgment is a two-step process.  First, an entry of default is entered by the clerk of the court when a party fails to plead and/or defend in a matter.  Fed. R. Civ. P. 55.  Second, a court enters default judgment after the party fails to appear or move to set aside default.  *Fermin v. Las Delicias Peruana Rest., Inc.*, 93 F. Supp. 3d 19, 28-29 (E.D.N.Y. 2015).

In order to grant a default judgment, a court must first ensure that a plaintiff took all the required procedural steps, including providing proper notice to the defendant.  Local Civ. R. 55.2(c).  Although a "default judgment is ordinarily justified where a defendant fails to respond to the complaint," a court must nevertheless determine whether the allegations establish liability as a matter of law.  *SEC v. Anticevic*, No. 05-CV-6991 (KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009); *see also Finkel*, 577 F.3d at 84.  Even after the entry of default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Trs. of the Plumbers Local Union No. 1 Welfare Fund. v. Philip Gen. Constr.*, No. 05-CV-1665 (NG) (RML), 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (quoting *In re Wildfire Ctr., Inc.*, 102 B.R. 321, 325 (E.D.N.Y 1989)).

### II.      Jurisdictional and Procedural Requirements

#### A.  *Subject Matter Jurisdiction*

3

Plaintiff seeks a declaratory judgment in this action pursuant to 28 U.S.C. § 2201.  (Am. Compl. at ¶1.)  Because the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the Court, there must be an independent basis for federal jurisdiction.  *See Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006).

Plaintiff asserts federal jurisdiction based on diversity pursuant to 28 U.S.C. § 1332, which requires complete diversity of citizenship between the parties and a matter in controversy that exceeds $75,000.  (Am. Compl. ¶5.) *See* 28 U.S.C. § 1332(a)(1).  Plaintiff is a corporation existing under the laws of Ohio with a principal place of business in Arizona.  (*Id.* at ¶2.)  Defendant is a limited liability company organized—and with a principal place of business—in New York.  (*Id.* at ¶3.)  Defendant's sole member is a citizen of New York.  (*Id.* at ¶3.)  Therefore, there is complete diversity of citizenship.

 In declaratory judgment actions based on diversity jurisdiction, "the amount in controversy is measured by the value of the object of the litigation."  *Correspondent Servs.*, 442 F.3d at 769 (quoting *Hunt v. Washington State Apple Adver. Com'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)); *see also, Am. Safety Cas. Ins. Co. v. 385 Onderdonk Ave., LLC*, 124 F. Supp. 3d 237, 241 (E.D.N.Y. 2015).  The object of the litigation depends on the insurance coverage obligations in question.  *Id.*; *see also Lighton Indus., Inc. v. Allied World Nat'l Assurance Co.*, 348 F. Supp. 3d 167, 181 (E.D.N.Y. 2018); *Certified Multi-media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 150 F. Supp. 3d 228, 239 (E.D.N.Y. 2015), aff'd, 674 F. App'x 45 (2d Cir. 2017).

Plaintiff's obligations under the Policy includes a duty to defend against lawsuits and allows for an aggregate limit of liability of $2 million for "Products/Completed Operations" and $2 million for "General Aggregate Liability (Other Than Products/Completed Operations)."  (Policy, Dkt. 31-2 at 14, 17.)  The Underlying Action seeks damages up to $1 million on each of six causes of action.

(Verified Complaint at ¶¶ 51, 60, 69, 79, 95, 102.)  Accordingly, because Plaintiff's exposure under the Policy exceeds $75,000, the requirements of 28 U.S.C. § 1332(a)(1) have been met.

### B.  Personal Jurisdiction

"[A] court may not properly enter a default judgment until it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." *Lopez v. Yossi's Heimishe Bakery Inc.*, No. 13-CV-5050 (FB) (CLP), 2015 WL 1469619, at *4 (E.D.N.Y. Mar. 30, 2015).  An individual may be served according to state law where service is made.  Fed. R. Civ. P. 4(e)(1).

Defendant, a corporation, was served via the New York Secretary of State.  (Dkt. 33.)  It was, thus, properly served with the Summons and Amended Complaint in accordance with the service requirements of New York law.  *See* N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1).

### C.  Procedural Requirements for Default

Plaintiff has also demonstrated that it has taken the required steps under the Local Rules by requesting and obtaining an entry of default (Dkt. 35), making an application to the Court for default judgment (Dkt. 36), and filing proof that the motion papers were mailed to Defendant. (Dkts. 33, 38.)  *See* Local Civ. R. 55.2.

### III.    Analysis

### A.  Rescission of an Insurance Policy

An insurer may rescind a policy under New York law if it can demonstrate that the insured made a material misrepresentation in its application.  *Barkan v. N.Y. Schools Ins. Reciprocal*, 65 A.D.3d 1061, 1064 (N.Y. App. Div. 2d Dep't 2009); *Zilkha v. Mut. Life Ins. Co.*, 287 A.D.2d 713, 714 (N.Y. App. Div. 2d Dep't 2009).

A misrepresentation is a false statement made to the insurer by an applicant as an inducement to obtain insurance coverage. N.Y. Ins. Law § 3105(a). It is material if "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract." N.Y. Ins. Law § 3105(b)(1). *See, First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 118 (2d Cir. 1999) (misrepresentation is material "only if it is shown that the insurer would not have written the insurance policy had the facts at issue been disclosed"). In order for the Court to grant the Motion and rescind the Policy, Plaintiff must demonstrate that, in issuing the Policy, it relied on a misrepresentation and that the misrepresentation was material. *Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*, 540 F.3d 133, 139 (2d Cir. 2008); N.Y. Ins. Law §§ 3105(a), (b)(1). To meet this burden, insurers must submit documentation showing its underwriting practices for similarly situated applicants. *See Sonkin Assocs., Inc. v. Columbian Mut. Life Ins. Co.*, 150 A.D.2d 764, 764, 541 N.Y.S.2d 611, 612 (1989) (insurer "must adduce proof as to its underwriting practices with respect to applicants with similar histories"). Such documentation may include "underwriting manuals, bulletins, or rules pertaining to similar risks, which show that it would not have issued the same policy if the correct information had been disclosed in the application." *Barkan*, 65 A.D.3d at 1064; *see also* N.Y. Ins. Law § 3105(c) ("In determining the question of materiality, evidence of the practice of the insurer which made such contract with respect to the acceptance or rejection of similar risks shall be admissible.")

Defendant made two false statements on its Application. First, it represented its trade as solely "Interior Paint" and "Carpentry," without indicating that it engaged in any exterior work. In direct contravention of this representation, it entered into a contract to erect external scaffolding at 89 Bowery Street. (Appl. at 4; Contract at 1.) Defendant also represented that it does not perform work above two stories, but its work at 89 Bowery Street required scaffolding that included a "7th Floor return." (Appl. at 6; Contract at 1.) The Underlying Action, moreover, alleges outdoor

6

obstructions at the third and eighth floors, both of which would be above two stories and included

work that Defendant performed.  (Verified Compl. at ¶¶ 25-28.)  Because Defendant's statements

on the Application were false and made to induce Plaintiff to issue the Policy, they constitute

misrepresentations.

Furthermore, these misrepresentations were material.  Plaintiff asserts that it would not have

issued the Policy if the Application had accurately reflected Defendant's exterior work and work

above two stories.  (Am. Compl. at ¶¶37, 57; Kassube Decl. at ¶8, Dkt. 36-7.)  In support, Plaintiff

submitted the underwriting guidelines for its New York Artisan Program, which specifically prohibit

"Any exterior work over three stories."  (Artisan Program Guidelines at 5, Dkt. 36-13.)  The

undersigned finds this to constitute sufficient proof of Plaintiff's underwriting practices with respect

to similarly situated applicants.

The undersigned therefore finds that Defendant made material misrepresentations in its

Application and that Plaintiff has met its burden for rescinding the Policy.

### B.  Declaratory Judgment Is Appropriate

Entering a judgment declaring the "rights and legal relations" of parties is only appropriate

in an "actual controversy within its jurisdiction."  28 U.S.C. § 2201.  An "actual controversy" exists

when "the facts alleged, under all the circumstances, show that there is a substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment."  *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoted in *United*

*States Underwriters Ins. Co. v. Image by J & K, LLC*, 335 F. Supp. 3d 321, 329 (E.D.N.Y. 2018)).

Insurance coverage cases have become "the paradigm for asserting jurisdiction despite future

contingencies that will determine whether a controversy ever actually becomes real."  *Associated*

*Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (internal quotations omitted).

"That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory

judgment action." *Id.* Thus, it is not necessary to wait until resolution of the Underlying Action,

when liability has been established, to determine whether there is, in fact, a controversy over

Plaintiff's obligations under the Policy. The focus should be on whether there is a practical

likelihood that the contingency will occur. *Id.; see also U.S. Underwriters Ins. Co.*, 335 F. Supp. 3d at

345-46 n.17. "In applying the practical likelihood test, the Court focuses on whether there is

pending litigation or the likelihood of future litigation that may require Plaintiff to indemnify

Defendant." *Id.*

Here, Defendant has already been named as a party in the Underlying Action. Therefore,

there is a "practical likelihood" that it will be found liable in the Underlying Action, triggering

Plaintiff's obligation to pay the damages. *Id.* Plaintiff's duty to defend under the Policy is also likely

to be triggered – if it hasn't already occurred. *Cf., Associated Indem. Corp.,* 961 F.2d at 35 (contingency

of whether excess insurance threshold would be met). Because a "real question of conflicting legal

interests" exists, *id.* (*internal quotations omitted*), entering declaratory judgment is appropriate.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that Plaintiff's Motion for

Default Judgment be granted and that the Court declare that 1) the Policy is rescinded, and 2) any

obligations on the part of Plaintiff arising from the Policy are extinguished.

Plaintiff is directed to serve this Report and Recommendation on Defendant forthwith and

file proof of service on the docket by January 24, 2020.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen

(14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any just

objection waives the right to further judicial review of this Report and Recommendation. *Caidor v.*

*Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         January 16, 2020

9